**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IMPERIAL CRANE SERVICES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 13 C 04750 |
| v. | ) | |
| | ) | |
| CLOVERDALE EQUIPMENT COMPANY, | ) | Judge Joan H. Lefkow |
| | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Imperial Crane Services, Inc. ("Imperial") filed a one-count complaint against defendant Cloverdale Equipment Company ("Cloverdale") alleging breach of warranty in connection with two cranes Cloverdale sold to Imperial. Cloverdale has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1391, or, in the alternative, to transfer this action to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1404. For the following reasons, Cloverdale's motion is denied.[1]

---

[1] This court has jurisdiction pursuant to 28 U.S.C. § 1332. Imperial is an Illinois corporation with its principal place of business in Bridgeview, Illinois. (Compl. at ¶ 1.) Cloverdale is a Michigan corporation with its principal place of business in Oak Park, Michigan. (*Id.* at ¶ 2.) More than $75,000 is in controversy. (*Id.* at ¶ 4.)

## BACKGROUND[2]

Imperial is an Illinois corporation that supplies cranes and other equipment and machinery, together with operators for the cranes, equipment and machinery. Cloverdale is a Michigan corporation that sells and rents cranes and related equipment and machinery.

In March 2013, Imperial sought cranes to rent or purchase that it would then rent out to a customer for a construction project in Cartagena, Colombia. Imperial learned that Cloverdale had two 15-ton capacity carry deck cranes that would do the job. Imperial and Cloverdale thus entered into negotiations for the purchase of the two cranes. These negotiations took place entirely over the phone, and were between Imperial's vice president, Bill Tierney, and Cloverdale's president, Todd Moilanen, from their respective offices in Illinois and Michigan. The cranes themselves were located in Texas during the negotiations.[3]

---

[2] The following facts are taken from the complaint and presumed true unless contradicted by affidavit. *See Interlease Aviation Investors II (Aloha) L.L.C.* v. *Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003). In ruling on a Rule 12(b)(3) motion, the court is not obligated to limit its consideration to the pleadings. *See Cont'l Cas. Co.* v. *Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

[3] In support of its motion to dismiss or transfer venue, Cloverdale provides the affidavit of its president, Todd Moilanen. Moilanen asserts therein that the purchase of the two cranes stemmed from a failed leasing transaction. Specifically, he states that Imperial initially contacted Cloverdale in February (not March) 2013 in connection with the Colombia project, and that the parties discussed Cloverdale's leasing eight cranes to Imperial. (Dkt. 6 at Moilanen Aff. ¶¶ 6-9.) Later, two Imperial representatives traveled to Michigan to inspect the eight cranes. (*Id.* at ¶ 9.) The parties reached their lease agreement in Michigan and Imperial sent trucks to Cloverdale's yard in Michigan to transport the cranes to Texas. (*Id.* at ¶¶ 12-13.) Once the cranes were in Texas, however, all but two cranes were returned to Cloverdale. (*Id.* at ¶ 16.) It was then—with the two cranes still in Texas—that the parties negotiated the terms for the actual sale of those two cranes that are the subject of this suit. (*Id.* at ¶¶ 17-18.)

Imperial does not contest this version of the facts, and the court accepts these facts as true. *See Citadel Grp. Ltd.* v. *Wash. Reg'l Med. Ctr.*, No. 07 C 1394, 2008 WL 5423553, at *2 (N.D. Ill. Dec. 29, 2008) (in ruling on 12(b)(3) motion, "we must take all the allegations in the plaintiff's complaint as true unless they are contradicted by affidavit") (citing *Interlease*, 262 F. Supp. 2d at 913). Imperial contends, however, that the failed lease of the eight cranes and its ultimate purchase of the two cranes were separate

(continued...)

Over the course of the negotiations, Moilanen confirmed for Tierney that the two cranes Imperial sought to purchase were ready to be shipped from Texas to Colombia and immediately put to use. The parties settled on a price of $107,500 per crane ($215,000 total), which Imperial was to pay immediately via wire transfer from its bank account in Cook County, Illinois, to Cloverdale's bank account in Ohio.[4] One of the terms of the parties' agreement, which was oral and never memorialized in writing, was that Imperial would take possession of the cranes immediately in Port Houston, Texas, and that Cloverdale would send Imperial the Manufacturer's Statements of Origin for the cranes as soon as possible.

Based on Moilanen's representations regarding the readiness of the cranes for the Colombia project, Imperial accepted and paid for the cranes. After doing so, but before the cranes were operated or used in the project, numerous defects in the cranes were found requiring immediate repair before the cranes could be used. The defects included engine leaks, swing gearbox operation issues, damaged swing bearing and boom wear pads, insecure counterweights, telescope cylinder leaks, boom lift cylinder leaks, steer cylinder leaks, and hydraulic tank leaks. The estimated cost of repairing the cranes was at least $31,109.72.

---

(...continued)
transactions, and the transaction at issue here is the purchase. (Dkt. 11 at 1-2.) As discussed in text, the court finds that the agreement that gave rise to this dispute and the agreement whose terms will be at issue in this litigation is the agreement for Imperial's purchase of the two cranes, not the eight-crane lease agreement.

[4] Moilanen does not state the location of Cloverdale's bank in his affidavit, but Cloverdale's brief in support of its motion to dismiss asserts that its bank is located in Michigan, not Ohio. (Dkt. 6 at 6.) Imperial's allegation that Cloverdale's bank is located in Ohio is supported by its affidavit and this dispute must be resolved in favor of Imperial. *See Nat'l Tech., Inc.* v. *Repcentric Solutions*, No. 13 C 1819, 2013 WL 3755052, at *5 (N.D. Ill. July 16, 2013) (in ruling on a 12(b)(3) motion, "[f]actual conflicts are resolved in favor of the plaintiff, and the court may draw reasonable inferences from those facts") (citing *Moore* v. *AT & T Latin Am. Corp.*, 177 F. Supp. 2d 785, 788 (N.D. Ill. 2001)).

When it learned of the repairs necessary to render the cranes usable, Imperial notified Cloverdale that it was revoking its acceptance of the cranes and demanded a full refund of $215,000 in exchange for return of the cranes. Cloverdale refused to refund to Imperial or take possession of the cranes and has also refused to make or pay for the repairs on the cranes. Imperial is currently incurring costs related to the transportation and storage of the cranes.

Cloverdale has moved to dismiss the complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1391. In the alternative, it has requested that the court transfer the action to the Eastern District of Michigan, where it has a declaratory action pending regarding the same set of facts.[5]

## ANALYSIS

**I.  Federal Rule of Civil Procedure 12(b)(3) Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action that is filed in an improper venue. *See* Fed. R. Civ. P. 12(b)(3); *Caballero* v. *Taylor*, No. 12 C 8645, 2013 WL 2898254, at *1 (N.D. Ill. June 13, 2013). When a defendant challenges venue, the plaintiff bears the burden of establishing venue is proper. *Nat'l Tech., Inc.* v. *Repcentric Solutions*, No. 13 C 1819, 2013 WL 3755052, at *5 (N.D. Ill. July 16, 2013) (citing *Int'l Travelers Cheque Co.* v. *BankAmerica Corp.*, 660 F.2d 215, 222 (7th Cir. 1981)). If venue is improper, the court can either dismiss the suit or transfer it to a district in which the plaintiff could have filed it initially. *See* 28 U.S.C. § 1406(a).

---

[5] According to Moilanen, once Imperial threatened to bring suit against Cloverdale in the Circuit Court of Cook County, Moilanen instructed his attorneys to file a declaratory action in Michigan. (Dkt. 6 Moilanen Aff. at ¶¶ 31-32.) Cloverdale initially filed suit in the State Court of Michigan, Oakland County, on June 25, 2013, and Imperial removed the suit to federal court based on diversity of citizenship. (Dkt. 11 Ex. 3 at 3-4.) That suit is still pending in the Eastern District of Michigan. (Dkt. 6 at 3.)

The proper bases for venue are found in 28 U.S.C. § 1391(b). Under that statute venue is proper in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). As it relates to subpart (1), an entity "with the capacity to sue and be sued in its common name under applicable law" is "deemed to reside" in any "judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* at § 1391(c)(2).

Venue can be proper in more than one district. "The test is not whether a majority of the activities pertaining to the case were performed in a particular district but whether a substantial portion of the activities giving rise to the claim occurred in the particular district." *TruServ Corp.* v. *Neff*, 6 F. Supp. 2d 790, 792 (N.D. Ill. 1998). To determine proper venue in a breach of contract action, courts take a number of factors into consideration, including "where the conduct underlying the breach occurred and where performance under the contract was to take place," *Moran Indus.* v. *Higdon*, No. 07 C 6092, 2008 WL 4874114, at *5 (N.D. Ill. June 26, 2008) (quoting *PKWare, Inc.* v. *Meade*, 79 F. Supp. 2d 1007, 1016 (E.D. Wisc. 2000)), and whether there was "[f]ailure to make payment in a district pursuant to a contract." *D'Ancona & Pflaum LLC* v. *M2 Software, Inc.*, No. 00 C 7150, 2001 WL 873021, at *1 (N.D. Ill. Aug. 2, 2001); *see also H&V Silver Mine, Inc.* v. *Cohen*, No. 96 C 3550, 1997 WL 639229, at *4 (N.D. Ill. Oct. 6,

1997). Additionally, "[w]here the underlying events are essentially communications made by two parties located in separate districts, '[t]he requirements of [§ 1391(b)(2)] may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action.'" *Citadel Grp. Ltd.* v. *Wash. Reg'l Med. Ctr.*, No. 07 C 1394, 2008 WL 5423553, at *3 (N.D. Ill. Dec. 29, 2008) (quoting *Interlease*, 262 F. Supp. 2d at 913).

In *Citadel*, for example, the court denied the defendant's motion to dismiss for improper venue where the parties had negotiated the contract from their respective offices in Illinois and Arkansas. *Citadel*, 2008 WL 5423553, at *3. The defendant argued that venue was improper in this district because all the substantial events took place in Arkansas and the parties' contract was for the construction of a building in Arkansas. The court rejected this argument as "oversimplif[ying] the parties' relationship." *Id.* Instead, it found that substantial events occurred in both states: the defendant sent a request for proposals to the plaintiff in Illinois; the plaintiff sent its proposal to the defendant in Arkansas; the parties communicated about the proposal from their respective offices; the defendant sent the plaintiff a signed authorization with a deposit; and the plaintiff began acting pursuant to that authorization. These communications constituted substantial events and were sufficient to support venue in this district. *Id.*

Similarly, in *Walron Films, Ltd.* v. *Cinequanon Pictures International*, No. 97 C 3280, 1997 WL 779059, at *2 (N.D. Ill. Dec. 12, 1997), the court denied a motion to dismiss for improper venue because "venue is proper in this district even though venue may also be proper elsewhere." The plaintiff was a Delaware corporation with its principal place of business in Chicago. It was the parent of a California corporation that entered into a film distribution agreement with the defendant, another California corporation. The agreement was executed in

California and provided that the defendant would direct payments from the film to a Chicago bank account. After the plaintiff brought suit, the defendant moved to dismiss under Rule 12(b)(3). It argued that proper venue was California "because two California corporations signed the Agreement in California." *Id.* The court disagreed, explaining it "is axiomatic that § 1391 does not contemplate a single appropriate district for venue." *Id.* The court held that venue was proper in this district as Illinois had "substantial" contacts with the events that gave rise to the suit (the defendant's failure to send payments to the Chicago bank).

Imperial argues that a substantial part of the events took place in this district. Namely, Imperial's vice president, Tierney, negotiated the sale of the cranes by telephone, email, and facsimile from his office in Illinois with Cloverdale's president, Moilanen. (Dkt. 11 Tierney Aff. at ¶ 18.) The alleged breach itself occurred because of the material representations or omissions that Moilanen made to Tierney while Tierney was at his own office in Illinois. (Dkt. 1 at ¶¶ 18-21, 50, 54-55.)

Relying on facts underlying the ill-fated lease of the eight cranes, and not Imperial's ultimate purchase of the two cranes, Cloverdale argues venue here is improper because a substantial part of the events giving rise to this suit "did not occur in Illinois–nearly the entire transaction was negotiated and performed in Michigan." (Dkt. 6 at 5.) Specifically, Moilanen attests that Imperial's representatives traveled to Michigan and inspected the eight cranes there and that the parties reached the lease agreement in Michigan. (Dkt. 6 Moilanen Aff. at ¶¶ 11-12.) But the agreement on which this action is based is not the agreement for the lease of eight cranes, it is the agreement for the sale of two cranes. While Imperial's alleged inspection in

connection with the lease may eventually be at issue in this dispute,[6] it is incorrect for Cloverdale to assert that this inspection and acceptance of the cranes are "the *only* issue[s] in this case." (Dkt. 12 at 3 (emphasis in original).)

It is true that Moilanen negotiated the contract from his office in Michigan, but the same can be said of Tierney in Illinois. These negotiations and the alleged warranty that accompanied the sale of the two cranes are the substantial events at issue. Thus, "[a]lthough venue might be proper in [Michigan], § 1391(b)(2) does not require the court to determine the best venue for an action, but merely whether 'a substantial part of the events or omissions giving rise to the claim occurred' in the judicial district in which the action was brought." *Nat'l Tech.*, 2013 WL 3755052, at *6 (quoting 28 U.S.C. § 1391(b)(2)). Substantial events surrounding the purchase of the cranes occurred in Illinois, making venue in this district proper. Thus, the Rule 12(b)(3) motion to dismiss is denied.[7]

## II.  Motion to Transfer Pursuant to 28 U.S.C. § 1404

In the alternative, Cloverdale moves to transfer this action to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a), under which the court may transfer venue to another district for "the convenience of parties and witnesses, in the interest of justice." To support a

---

[6] Moilanen's affidavit indicates that the two cranes Imperial purchased were among the eight it inspected in connection with the lease. (Dkt. 6 Moilanen Aff. at ¶¶ 9, 11-17.)

[7] Imperial argues that venue is also proper pursuant to § 1391(b)(1) because, as an entity subject to personal jurisdiction in this district, Cloverdale is a "resident" of this district for purposes of venue. As noted above, venue is proper in any district in which a defendant corporation is subject to the court's personal jurisdiction. 28 U.S.C. § 1391(c)(2). Cloverdale has not contested this court's personal jurisdiction. By filing the present motion without previously or contemporaneously filing a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, Cloverdale has waived that defense. *See* Fed. R. Civ. P. 12(h); *see also XPO Logistics, Inc.* v. *Gallatin*, No. 13 C 1163, 2013 WL 3835358, at *5 (N.D. Ill. July 24, 2013). Venue is thus also proper under § 1391(b)(1) because Cloverdale is a resident of this district.

motion to transfer venue, "the moving party must show that (1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interest of justice." *See Gueorguiev* v. *Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007). The consideration the court gives each factor rests in the court's discretion, and the burden is on the moving party to demonstrate the transferee forum is more convenient. *See id.* at 856-57; *Citadel*, 2008 WL 5423553, at *3.

As the court has already determined venue is proper in this district, the first factor has been met. Venue would be proper in the Eastern District of Michigan because it is a district in which the defendant resides. *See* 28 U.S.C. § 1391(b)(1); *Citadel*, 2008 WL 5423553, at *4. The court thus turns to the convenience and interests of justice factors.

    **A.**    **Convenience of the Parties and Witnesses**

The court considers multiple factors in deciding whether it would be more convenient to transfer the litigation. These factors include (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the parties in litigating in the respective fora. *See, e.g., Brandon Apparel Grp., Inc.* v. *Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999).

    **i.**    **Imperial's Choice of Forum and Situs of Material Events**

Under § 1404(a), a plaintiff's choice of forum is generally entitled to substantial deference, particularly if it is the plaintiff's home forum. *Nat'l Tech.*, 2013 WL 3755052, at *7. This deference is "lessened where a plaintiff chooses a forum that has little connection with the relevant facts giving rise to the litigation." *See Caballero*, 2013 WL 2898254, at *3.

9

Where, as here, "the case involves two identical suits in distinct venues, this factor loses its significance entirely: each case has a plaintiff, and one of them will necessarily be disturbed." *Research Automation, Inc.* v. *Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 979 (7th Cir. 2010). But where one case is a declaratory judgment action and the other is a mirror-image action that seeks coercive relief, priority is generally given to the coercive action. *Id.* at 980. This is so even if the coercive action was filed after the declaratory judgment action because the first-to-file rule is not adhered to rigidly in the Seventh Circuit. Instead, filing order is only "one factor among many" that the court may consider. *See id.* at 977. The Seventh Circuit has also explained that it is appropriate to depart from the first-to-file rule "where one party files its lawsuit in anticipation of an impending suit by the opposing party" because this "behavior only exacerbates the risk of wasteful litigation." *Id.* at 980.

Cloverdale argues that this dispute is better adjudicated in the Eastern District of Michigan because there is a "mirror image" declaratory judgment action already pending there. (Dkt. 6 at 10.) Moilanen states that after he learned Imperial planned to file suit against Cloverdale in Illinois, Cloverdale filed an action in Michigan, six days before Imperial filed this suit. (*See* Dkt. 6 Moilanen Aff. at ¶¶ 31-32; Dkt. 11 Ex. 2; Dkt. 1.)

Although the Michigan action was filed first, the complaint in that action asserts a single claim for declaratory relief that mirrors this suit, which seeks coercive relief. (*See* Dkt. 11 Ex. 2.) "Thus, regardless of [Cloverdale's] filing of an action for declaratory judgment in the [Eastern District of Michigan], [Imperial] is the plaintiff in this suit and its choice of forum will be afforded deference." *Robinson Steel Co.* v. *Caterpillar Inc.*, No. 10 C 438, 2011 WL 923415, at \*6 (N.D. Ind. Mar. 14, 2011); *see also Bank of Am., N.A.* v. *Illumination Station*, No. 10 C

10

3061, 2011 WL 1642526, at *3 (N.D. Ill. May 2, 2011). Moreover, and as discussed above, Imperial's choice of its home forum is entitled to weight because this district is connected to the facts giving rise to this dispute. *See, e.g., Caballero*, 2013 WL 2898254, at *3. This factor thus weighs against transfer.

### ii. Situs of Material Events

Where the situs of material events is not concentrated in one district or another, this factor is "neutral." *See Caballero*, 2013 WL 2898254, at *3. As discussed above, material events occurred in both this district and the Eastern District of Michigan. This factor is thus a draw.

### iii. Convenience of the Parties

In evaluating this factor the court will consider "the parties' respective residences and their ability to bear the expenses of litigating in a particular forum." *Genocide Victims of Krajina* v. *L-3 Servs., Inc.*, 804 F. Supp. 2d 814, 826 (N.D. Ill. 2011). Cloverdale argues that the convenience of the parties favors Michigan because its witnesses and evidence are in Michigan and Imperial has shown itself able to travel to Michigan. (Dkt. 6 at 9.) Predictably, Imperial argues the opposite. (Dkt. 11 at 11.) Neither party argues that it would be unable to meaningfully present its case in the other's home forum. "Litigation in another district is inevitably inconvenient for a party," and the court therefore finds this factor does not favor either venue. *Nat'l Tech.*, 2013 WL 3755052, at *7.

### iv. Relative Ease of Access to Sources of Proof

Cloverdale argues this factor "slightly favors Michigan" because all documents relating to Imperial's inspection of the cranes in Michigan (in connection with the lease of the eight

11

cranes) and all other relevant documents in Cloverdale's possession are located in Michigan. (Dkt. 6 at 8.) Imperial argues that its documents are in Illinois. It also points out that the cranes are currently located in Illinois (although Cloverdale protests that the cranes' current condition is "immaterial; that Imperial let the cranes deteriorate after it took possession of the cranes months ago is of no import to the outcome of this litigation" (dkt. 12 at 2)).

This factor does not strongly favor either venue because "documents and records are easily transportable (and, indeed, must be copied and delivered to the opponent no matter where the case will be litigated) and their location generally is not a persuasive reason for transfer." *Simonoff* v. *Kaplan*, *Inc.*, No 09 C 5017, 2010 WL 1195855, at *2 (N.D. Ill. Mar. 17, 2010). To the extent the current condition of the cranes will be relevant, the court finds it would not be too burdensome for Cloverdale representatives to travel to Illinois to inspect the cranes.

    v.  **Convenience of Witnesses**

"The determination of the convenience of witnesses is often considered the most important factor in the transfer balance." *Addiction & Detoxification Inst., LLC* v. *Rapid Drug Detox Ctr.*, No. 11 C 7992, 2013 WL 951115, at *4 (N.D. Ill. Mar. 11, 2013). The convenience of non-party witnesses is "substantially more important than the convenience of party witnesses" because party witnesses can easily "compel their employees' appearances at trial." *Id.*

Cloverdale's president, Moilanen, has sworn in his affidavit that in addition to relying on his own testimony and the testimony of various Cloverdale employees who reside in Michigan, he plans to call a third party witness, Patrick Henry. (Dkt. 6 Moilanen Aff. at ¶¶ 26-27.) Henry is employed by a non-party and was present for Imperial's inspection of the eight cranes in Cloverdale's yard in Michigan. (*Id.* at ¶ 27.) Moilanen states that Henry will "provide

independent, third-party testimony regarding the inspection and negotiations regarding Imperial's initial rental of the eight cranes," testimony that Moilanen believes is "critical for [Cloverdale's] defense." (*Id.* at ¶¶ 27, 29.) Cloverdale argues Henry would not be subject to compulsory process in this court but would be subject to such process in the Eastern District of Michigan.

Imperial argues that Henry's testimony is not relevant because it relates to the lease of the eight cranes, which is not at issue in this suit. (Dkt. 11 at 12.) Imperial's vice president, Tierney, states that the testimony of its third party witness, Tony Blanzeniak (a resident of Illinois), is critical to Imperial's claim for damages and that Blanzeniak is not subject to subpoena power in Michigan. (Dkt. 11 at Tierney Aff. at ¶ 33.) According to Tierney, Blanzeniak will testify to the condition of the two cranes Imperial purchased. (*Id.*) Cloverdale rebuts that Blanzeniak's testimony is inconsequential because "[t]he current condition of the cranes is immaterial." (Dkt. 12 at 2.) Tierney also identifies another non-party witness, James Langley, who is a resident of Texas. (Dkt. 11 at Tierney Aff. at ¶ 33.) Tierney asserts that Langley will testify to the condition of the two cranes and their inspection that was performed in Texas after Imperial purchased them. (*Id.*)

This factor does not weigh heavily in favor of either forum. Both parties argue they will rely on a third party witness who cannot be subpoenaed in the other's preferred district, and both parties argue that the other's third party witness is irrelevant to this litigation. A third non-party witness does not reside in either party's favored forum. Because the court finds that the "balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Research Automation*, 626 F.3d at 978.

13

### B.     Interests of Justice

In considering the interests of justice, the court looks to factors such as docketing congestion and speed to trial in the transferor and potential transferee districts; each court's relevant familiarity with the applicable law; the desirability of resolving the controversy in each forum; and the relationship of the respective communities to the controversy.  *See id.*  "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result."  *Id.*

As Cloverdale acknowledges, there is no substantial difference in the median time to trial or resolution of cases in this district versus the Eastern District of Michigan.[8]  This factor is thus not determinative.  Nor is the law to be applied.  Imperial argues, and Cloverdale does not refute, that the law to be applied is the Uniform Commercial Code, law that does not differ much from state to state and that any federal court can apply with ease.  "Furthermore, the court finds no reason why [Michigan] would have a greater interest in contract and [warranty] claims against a [Michigan] company than Illinois would have in resolving such claims brought by an Illinois resident corporation."  *Nat'l Tech.*, 2013 WL 3755052, at *8

Moreover, the court finds the cases on which Cloverdale relies to be distinguishable.  In *United States ex rel. Heathcote Holdings Corp.* v. *L'Oreal USA, Inc.*, No. 11 C 1921, 2011 WL 3511064, *4 (N.D. Ill. Aug. 9, 2011), the interests of justice favored transfer to the Southern District of New York because the material events in that case took place in the New York metropolitan area, and the litigation hinged on decisions made by the defendant in New York.

---

[8] Median time to trial in this district is 28.9 months versus 25.8 months in the proposed transferee district.  Median time to resolution is 6.7 months in this district versus 8.3 months in the Eastern District of Michigan.  (Dkt. 6 Ex. E at 3.)

14

*Heathcote* did not involve a contract negotiated in two different venues, as is the case here. There were also other similar suits pending against the defendant in the Southern District of New York in *Heathcote*.

Cloverdale also relies on *Sanders* v. *Franklin*, 25 F. Supp. 2d 855, 859 (N.D. Ill. 1998), in which the court held that the interests of justice favored resolution of the dispute in Michigan as opposed to this district because "Michigan's law governs the alleged contract[,] . . . this is an action between current and former Michigan residents[, and] . . . Michigan has a greater interest in adjudicating over matters involving business transactions occurring within its jurisdiction." As already addressed, this suit is between an Illinois resident and a Michigan resident, and substantial events giving rise to it occurred in this district.

Finally, as discussed above, the court is not persuaded that the interests of justice favor the Eastern District of Michigan by virtue of the mirror-image declaratory judgment action Cloverdale filed there. The court thus finds that the interests of justice do not weigh in favor of transferring the case to the Eastern District of Michigan. In light of all the aforementioned factors, the court holds that this case would be best served by remaining in this district.

**CONCLUSION AND ORDER**

For the foregoing reasons, Cloverdale's motion to dismiss pursuant to Rule 12(b)(3), or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404 (dkt. 5) is denied. Imperial shall move to stay the Michigan action. Defendant is directed to answer the complaint. This case is set for a scheduling conference on November 21, 2013 at 8:30 a.m. The parties shall report on the status of the Michigan case and present a proposed scheduling order.

Date: November 4, 2013

_____
U.S. District Judge Joan H. Lefkow