**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IMPERIAL CRANE SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13 C 4750 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| CLOVERDALE EQUIPMENT | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Imperial Crane Services, Inc. filed a one-count complaint against Cloverdale Equipment

Company alleging breach of warranty. (Dkt. 1.) Before the court is defendant's motion for

summary judgment. (Dkt. 30.) For the reasons stated below, defendant's motion is denied.[1]

**BACKGROUND[2]**

Both Imperial Crane Services, Inc. ("Imperial") and Cloverdale Equipment Company

("Cloverdale") lease and sell heavy equipment. (Dkt. 36 ("Def. Am. L.R. 56.1") ¶¶ 4, 6.)

Imperial, as its name suggests, specializes in cranes.

In early 2013, Imperial received an order to lease twenty-five cranes for a construction

project in Columbia. (*Id.* ¶ 11.) Imperial, however, only had seventeen cranes available. (*Id.*

¶ 12.) With limited time to fill the order, Imperial reached out to other companies, including

---

[1] The court has jurisdiction under 28 U.S.C. § 1332. Venue is appropriate in this district under 28 U.S.C. § 1391(b).

[2] The court will address many but not all of the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citation omitted). In accordance with its regular practice, the court has considered the parties' objections to statements of fact and included in this background only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion.

Cloverdale, to help it secure the remaining cranes. (*Id.* ¶ 13.) Cloverdale agreed to lease a number of its cranes to Imperial. (*Id.* ¶ 14.)

On March 7, 2013, Imperial's representatives visited Cloverdale's crane yards to confirm the cranes met the customer's specifications. (*See id.* ¶¶ 19–20; dkt. 36 ("Pl. L.R. 56.1") ¶ 8.) The parties dispute what happened next. According to Cloverdale, while there, the representatives also inspected the cranes and then delivered a report to Bill Tierney, Imperial's Chief Operating Officer, summarizing their findings. (Def. Am. L.R. 56.1 ¶¶ 19–20.) Imperial insists the representatives only confirmed the cranes were the type requested by the customer, and did not conduct any kind of examination. (Dkt. 36 ("Pl. L.R. 56.1 Resp.") ¶ 19; Pl. L.R. 56.1 ¶ 8.) Imperial furthers maintains that there was no report; the representatives simply *reported back* to Tierney that the cranes were the right type. (*See* Pl. L.R. 56.1 ¶ 8; dkt. 32-3 at 39:13–17.)

On March 12, 2013, Cloverdale's mechanics conducted their own inspection of the cranes. (Pl. L.R. 56.1 ¶ 7.) The following day, before they had finalized the terms of their agreement, the parties arranged for a freight company to ship the cranes to Houston, Texas, where they would be prepped for shipment to Columbia. (*Id.* ¶ 10.) Once the cranes arrived in Houston, however, Cloverdale discovered that Imperial's customer, who would be using the cranes in South America, had refused to provide a letter of credit to secure the cranes. (Def. Am. L.R. 56.1 ¶ 16.) Cloverdale refused to ship the cranes out of the country without a guarantee of payment. (*See id.*)

Recognizing that Imperial still needed to fill its order, Cloverdale offered to sell the cranes to Imperial instead. (*Id.* ¶ 17.) Imperial expressed interest in two older cranes from 2006. (Pl. L.R. 56.1 ¶ 12.) On March 19, 2013, after an initial phone conversation, Cloverdale emailed

Imperial a price quote. (*Id.*) Cloverdale asked for $109,000 for each of the 2006 cranes. (*Id.* ¶ 13.) The email also identified the make, model, and lifting capacity of the cranes and directed Imperial to wire Cloverdale money once it received an invoice. (*Id.*) Within an hour of receiving the email, Imperial called Cloverdale and offered to pay $100,000 for each crane. (*Id.* ¶ 15.) Cloverdale made a counteroffer of $107,500. (*Id.*) Imperial accepted the counteroffer. (*Id.*)

Cloverdale sent Imperial the invoice that same day. (Def. Am. L.R. 56.1 ¶¶ 22–23.) The invoice said "Used Equipment sold 'as is, where is'; no warranty express or implied." (*Id.* ¶ 2; dkt. 32-1.) Although he received the email, Tierney, who contracted on behalf of Imperial, claims he does not remember whether he opened the invoice. (Pl. L.R. 56.1 ¶ 21.) He does remember, however, that he forwarded the email to Imperial's accounts payable department. (*Id.*)

According to Imperial, it obtained possession of the cranes one to two weeks after the March 19 sale. (*Id.* ¶ 24.) It then performed multiple diagnostic tests on the cranes which involved taking readings and measurements while the cranes lifted weights. (*Id.*) The tests took between six and eight hours per crane. (*Id.*) When the tests were completed, Imperial determined the cranes were not in safe operating condition. (*Id.*) Imperial did not notify Cloverdale until June 3, 2013, nearly two months later. (*Id.* ¶ 26.) Imperial asked Cloverdale to either make repairs or issue a refund. (*Id.*) Cloverdale refused. (*Id.* ¶ 27.)

On July 1, 2013, Imperial filed suit against Cloverdale alleging breach of warranty. (Dkt. 1.) Imperial seeks the $215,000 it paid for the two cranes as well as other costs incurred by Imperial storing and transporting the cranes. (*Id.* at 9.) In the alternative, Imperial asks for the

difference between the value of the cranes as accepted and the value of the cranes as expected.
(*Id.*)

Cloverdale filed a motion to dismiss for improper venue or in the alternative to transfer venue, which the court denied. (Dkts. 5, 13.) Cloverdale now argues that it is entitled to summary judgment because Imperial's claim is foreclosed as a matter of law. (Dkt. 30.)

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or make credibility determinations. *Anderson*, 477 U.S. at 255.

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598–99 (7th Cir. 2000).

## ANALYSIS

Cloverdale argues that it is entitled to summary judgment because Imperial's breach of

warranty claim is foreclosed by § 2-316 of the Uniform Commercial Code ("UCC").[3] (Dkt. 31 at

2–3.) Section 2-316, entitled "Exclusion or Modification of Warranties," states that "unless the

circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,'

'with all faults' or other language which in common understanding calls the buyer's attention to

the exclusion of warranties and makes plain that there is no implied warranty." 810 Ill. Comp.

Stat. 5/2-316(3)(a). Cloverdale contends that because it expressly disclaimed all warranties, § 2-

316 precludes Imperial's breach of warranty claim. Although it does not dispute the effect of

§ 2-316, Imperial argues that the provision does not apply to its breach of warranty claim

because Cloverdale's warranty disclaimer is not part of the parties' contract—it is an additional

term. (Dkt. 37 at 6–7.) The parties' disagreement boils down to a question of whether the

warranty disclaimer attaches to their contract, which is governed by § 2-207 of the UCC.

Although additional terms are generally construed as proposals to alter a contract, Section

2-207 provides,

> Between merchants such terms become part of the contract unless:
> (a) the offer expressly limits acceptance to the terms of the offer;
> (b) they materially alter it; or (c) notification of objection to them
> has already been given or is given within a reasonable time after
> notice of them is received.

810 Ill. Comp. Stat. 5/2-207. Imperial argues that the second exception applies here—that

Cloverdale's warranty disclaimer materially altered the terms of the contract.[4]

---

[3] The parties do not dispute that because their contract concerned a sale of goods, the UCC controls.

[4] The parties agree they are both merchants under the UCC.

The commentary to § 2-207 explains that terms that materially alter a contract are those that "result in surprise or hardship if incorporated without express awareness by the other party." 810 Ill. Comp. Stat. 5/2-207 c.4.  Interpreting this language, Illinois courts have held that the test for whether an additional term is a material alteration of a contract is "whether the addition constitutes an unreasonable surprise to one of the bargaining parties."  *Clifford-Jacobs Forging Company* v. *Capital Engineering & Mfg. Co.*, 437 N.E.2d 22, 25, 107 Ill. App. 3d 29, 62 Ill. Dec. 785 (4th Dist. 1982); *see also Comark Merch., Inc.* v. *Highland Grp., Inc.*, 932 F.2d 1196, 1201 (7th Cir. 1991) (citation omitted); *VLM Food Trading Int'l, Inc.* v. *Illinois Trading Co.*, No. 12 C 8154, 2013 WL 816103, at *6 (N.D. Ill. Mar. 5, 2013) (citation omitted), *appeal dismissed* (July 19, 2013), *rev'd in part*, 748 F.3d 780 (7th Cir. 2014).  In determining whether an additional term constitutes an unreasonable surprise, courts may consider the course of conduct and prior dealings between the parties, as well as customary industry usage of the term.  *See Comark Merch., Inc.*, 932 F.2d at 1202–03.  The commentary to § 2-207 further guides courts in their application of the section by providing examples of clauses that would materially alter a contract.  810 Ill. Comp. Stat. 5/2-207 c.4.  The first example is "a clause negating such standard warranties as that of merchantability or fitness for a particular purpose in circumstances in which either warranty normally attaches."  *Id.*

Imperial maintains that it expected the cranes to be in "rentable condition"—in other words, that it assumed an implied warranty of merchantability or fitness for a particular purpose applied to the parties' agreement.  (Dkt. 37 at 2.)  Imperial explains that industry custom dictates that a crane be ready for immediate and safe use when it is rented.  (*Id.* at 2, 10.)  Imperial argues that given this standard, a disclaimer of these warranties would not only be a surprise, it would be an unreasonable one.

6

Cloverdale raises two arguments in reply.  First, in spite of the commentary to § 2-207, Cloverdale argues that a warranty disclaimer cannot be a material alteration of a contract as a matter of Illinois law, citing *Southern Illinois Riverboat Casino Cruises, Inc.* v. *Triangle Insulation & Sheet Metal Co.*, 302 F.3d 667 (7th Cir. 2002).  (Dkt. 38 at 1.)  That case, however, held that "a *remedy limitation* cannot, as a matter of Illinois law, constitute a material alternation of a sales contract under § 2-207."  302 F.3d at 676.  Although the additional terms at issue in that case included both a remedy limitation and a warranty disclaimer, the court's analysis of Illinois law was confined to the remedy limitation.  *Id.* at 670, 673–76.  As part of that analysis, the court considered two conflicting Illinois appellate court cases:  an earlier case that held that remedy limitations were per se material alterations and a later case that held that they were not. *Id.* at 673–74.  The Seventh Circuit found the later court's holding far more persuasive because, unlike the earlier court's holding, it was based on an analysis of the *commentary* to § 2-207.  *Id.* at 674–76.  In addition to listing examples of terms that are material alterations, the commentary following § 2-207 lists examples of terms that *are not* material alterations.  This list includes clauses "limiting remedy in a reasonable matter."  810 Ill. Comp. Stat. 5/2-207 c.5.  The later court read this commentary as rendering remedy limitations reasonable as a matter of law, and the Seventh Circuit agreed.  302 F.3d at 675–76.  That the Seventh Circuit's holding does not include warranty disclaimers, and that it cannot be extended to warranty disclaimers, is clear from the weight the court placed in the commentary to § 2-207—commentary that includes clauses negating standard warranties in its list of examples of material alterations.

Perhaps anticipating a rejection of its argument under *Southern Illinois Riverboat Casino Cruises, Inc.*, Cloverdale also contends that its disclaimer could not have constituted an unreasonable surprise because Illinois law "expressly condones" the use of as-is clauses to

7

disclaim warranties. (Dkt. 38 at 3.) In support of this assertion, Cloverdale cites to the same

provision it claims bars Imperial's breach of warranty claim—§ 2-316. Cloverdale's argument,

however, is unpersuasive. That Illinois adopted the UCC, which includes a provision concerning

the exclusion and modification of warranties, says nothing about what would have constituted an

unreasonable surprise in this case. Based on the plain language of the commentary to § 2-207

and the cases interpreting it, as well as Imperial's unrefuted contentions, the court concludes that

Cloverdale's warranty disclaimer constitutes a material alteration to the parties contract. It

therefore did not become part of the contract under § 2-207.

Finally, Cloverdale argues that another subsection of § 2-316 precludes Imperial's claim.

(Dkt. 31 at 3–4.) Section 2-316(3)(b) provides that when a buyer has examined goods before

entering into a contract "as fully as he desire[s] . . . there is no implied warranty with regard to

defects which an examination ought in the circumstances to have revealed to him." 810 Ill.

Comp. Stat. 5/2-316(3)(b). This provision, however, cannot foreclose Imperial's claim unless

Cloverdale can show that there is no genuine dispute of material fact as to whether Imperial

examined the cranes as fully as it desired *and* that there is no genuine dispute of material fact that

the alleged defects are of the kind that Imperial's examination would have revealed. Cloverdale

has not made this showing. As noted above, the parties dispute whether Imperial actually

inspected the cranes. (*See* Def. Am. L.R. 56.1 ¶ 19; Pl. L.R. 56.1 Resp. ¶ 19.) In his deposition,

Tierney acknowledges that Imperial representatives looked at Cloverdale's cranes, but in

response to a question about whether one representative "had information that the cranes were

good to go," Tierney testifies that "his information was more that the cranes are what they claim

to be." (Dkt. 32-2 at 39:13–17.) Even had Imperial's representatives inspected the cranes,

Imperial argues that it could not have been to the extent they "fully desired" as one of the two

cranes it later purchased was not in the crane yard. (Pl. L.R. 56.1 ¶ 9.) Cloverdale cannot

establish that there is no genuine dispute of material fact that the alleged defects would have

been revealed by an inspection, either. Imperial alleges that that the flaws in the cranes could

only be revealed by hours of diagnostic tests which involve taking measurements while the

cranes lift weights. (*Id.* ¶ 25.) Cloverdale does not offer any evidence disputing this, let alone

establishing that there is no genuine dispute of material fact that it is untrue. And although

Cloverdale suggests that the real reason Imperial rejected the cranes is because they did not meet

the customer's specifications (which it asserts would have been obvious from even the most

cursory examination of the cranes) (dkt. 31 at 1–2; Def. Am. L.R. 56.1 ¶¶ 33–34), these disputed

allegations cannot support a grant of summary judgment.

## CONCLUSION

For the reasons stated above, the court denies defendant's motion for summary judgment.

Because of the limited nature of defendant's motion, however, this denial should not be taken as

a determination that this case is appropriate for trial. The parties are encouraged to work toward

settlement. A status hearing is set for August 25, 2015 at 11:00 a.m.


Date:   August 11, 2015                                   _____
                                                          U.S. District Judge Joan H. Lefkow


9